**CENTRAL AMERICAN REFUGEE CENTER–CARECEN (N.Y.), Antonio Diaz, on Behalf of Themselves and All Others Similarly Situated, Plaintiffs,**

v.

**CITY OF GLEN COVE, Donald P. De Riggi, Mayor of the City of Glen Cove, Timothy Edwards, Individually and as Chief of Police of the City of Glen Cove and John Doe, Defendants.**

**No. CV 90–1419.**

United States District Court,
E.D. New York.

Dec. 13, 1990.

Community Legal Assistance Corp. (Keri A. Gould, Alan H. Levine, of counsel), Hempstead, N.Y., for plaintiffs.

Kroll & Tract, (Sol Kroll, Paul L. Meli, of counsel), Mineola, N.Y., for defendants.

## MEMORANDUM OF DECISION AND ORDER

MISHLER, District Judge.

The Central American Refugee Center ("Carecen"), a not for profit organization, and Antonio Diaz as representative of a class, move for an order to preliminarily enjoin the defendants from enforcing an ordinance "Relating to Solicitation of Employment" and from harassing members of the class who seek employment (the "ordinance"). The ordinance, a copy of which is appended, was adopted on March 13, 1990.

The complaint alleges the class to consist of "all Hispanic persons living or working in the Glen Cove area who have in the past been harassed by defendants or may be harassed in the future or who have been or will be deterred from speaking about employment in public places." (¶ 3). It further alleges that since the adoption of the ordinance "the Mayor and members of the Glen Cove police force have engaged in a pattern of harassment of persons of Hispanic descent" (¶ 20) and that the pattern of harassment has discouraged members of the class from seeking employment at "a 'shaping point' located in front of Carmen's Deli on Cedar Swamp Road in Glen Cove." (¶¶ 16 & 21). The claims allege violations of the First Amendment ("abridging the freedom of speech") and the Fourteenth Amendment ("the equal protection of laws").[1]

The court held an evidentiary hearing. Based on the conceded or undisputed facts contained in the affidavits in support and opposition to the motion, and the evidence

---

1. The equal protection of laws claim is that the alleged harassment is directed against "persons of Hispanic descent." (¶ 29).

offered at the evidentiary hearing, the court finds:

Carmen's Deli is located on Cedar Swamp Road at the corner of Second Street in the City of Glen Cove. Cedar Swamp Road is one of two main highways leading into and out of the City of Glen Cove. Cedar Swamp Road has four moving lanes for traffic—two in each direction. In addition, it has a lane for parking cars at varying times for varying periods of time (in part of the parking lane, no parking is permitted at any time). Carmen's Deli has a private parking lot about 30 feet wide (along Second Street) and about 100 feet wide (along Cedar Swamp Road). No parking is permitted for a distance of about 40 feet to the corner of Second Street; unlimited parking is permitted in the remaining 60 feet along Cedar Swamp Road.

From 1985, aliens both lawful and undocumented gathered at Carmen's Deli from about 6:00 a.m. to 7:00 a.m. awaiting offers from employers in the landscaping, construction, restaurant businesses and similar industries for employment by the day. By about 9:00 a.m., the hiring procedure was completed. The individuals seeking employment were Hispanic from Central America. By 1988, the group seeking daily employment at Carmen's Deli numbered approximately 30 to 40 people. On some days during the hiring season, which generally ran from April to November (with the summer months the most productive), the number in the group exceeded 100.

The Mayor and Chief of Police received complaints from residents, businesses and the pastor of the Greek Catholic Church on the manner in which the employment procedure was conducted. The complaints included the danger to persons in motor vehicles resulting from employers stopping in the moving lane to negotiate or offer jobs to prospective employees, and the danger to school children crossing Cedar Swamp Road on their way to school.

The City Council of the City of Glen Cove conducted public hearings and thereupon adopted the ordinance made the subject of this litigation.[2]

In enforcing the ordinance, Glen Cove police surveilled the area and cited truckers for parking in no-parking areas and stopping in moving lanes to offer employment to the members of the group gathered at Carmen's Deli in violation of the ordinance. (*See* Affidavit of Police Officer Schlee dated June 1990). Mayor De Riggi contacted the Immigration and Naturalization Service ("INS"). INS officers on occasion stopped Hispanics in the area and asked for identification. These activities discouraged non-documented aliens from gathering at Carmen's Deli in search of jobs.

## DISCUSSION

The test for granting preliminary injunctive relief requires "a showing of (a) irreparable harm and (b) either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979).

■ Though the burden for making a showing for granting injunctive relief is on the moving party, the City of Glen Cove bears the burden of justifying the restriction on the First Amendment right against the abridgement of "the freedom of speech." *National Advertising Co. v. Town of Babylon*, 900 F.2d 551, 555 (2d Cir.) (citing *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 71 n. 20, 103 S.Ct. 2875, 2882 n. 20, 77 L.Ed.2d 469 (1983)), *cert. denied*, —— U.S. ——, 111 S.Ct. 146, 112 L.Ed.2d 112 (1990); *Acorn v. City of Phoenix*, 798 F.2d 1260, 1263 (9th Cir.1986).

**2.** Mayor De Riggi advised the Community Legal Assistance Corporation (counsel for plaintiffs) on June 13, 1990:

The ordinance prohibits solicitation from a vehicle or by a pedestrian on a public street.

It is designed to assist the police in keeping the streets as safe as possible.
(Exhibit A to affidavit of Keri A. Gould dated July 24, 1990).

*The First Amendment Claim*

The legislative purpose of the ordinance is clearly stated in the preamble as eliminating the "safety hazard" caused by motorists who "stop in traffic and by the solicitors who stand in the street on the driver's side of parked cars while accosting or talking with the driver" for the "purpose of obtaining employment by approaching potential employers who drive to those sites in motor vehicles." *See National Advertising Co.*, 900 F.2d at 555–56.

■ The solicitation of employment and discussions between members of the alleged class and potential employers is speech as distinguished from conduct, though it does involve elements of "nonspeech." *See United States v. O'Brien*, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968) (Burning of draft card claimed as "symbolic speech"; "We cannot accept the view that an apparently limitless variety of conduct can be labelled 'speech' whenever the person engaging in the conduct intends thereby to express an idea"). *Young v. New York City Transit Auth.*, 903 F.2d 146, 153 (2d Cir.) (Begging and panhandling in the New York City subway system "is much more 'conduct' than it is 'speech' "), *cert. denied*, — U.S. —, 111 S.Ct. 516, 112 L.Ed.2d 528 (1990).

■ Public streets and highways have been the traditional fora for the exercise of the First Amendment right of free speech. *Frisby v. Schultz*, 487 U.S. 474, 479–80, 108 S.Ct. 2495, 2499, 101 L.Ed.2d 420 (1988); *International Society for Krishna Consciousness of New York, Inc. v. City of Baton Rouge*, 876 F.2d 494, 496 (5th Cir.1989). However the right of free speech on public sidewalks and highways is not limitless. *Frisby*, 487 U.S. at 479, 108 S.Ct. at 2499 (" '[E]ven protected speech is not equally permissible in all places and at all times' ") (quoting *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 799, 105 S.Ct. 3439, 3447, 87 L.Ed.2d 567 (1985)). In addition, commercial speech enjoys " 'a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values,' and is subject to 'modes of regulation that might be impermissible in the realm of noncommercial expression.' " *Board of Trustees of the State University of New York v. Fox*, 492 U.S. 469, 109 S.Ct. 3028, 3033, 106 L.Ed.2d 388 (1989) (quoting *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456, 98 S.Ct. 1912, 1918, 56 L.Ed.2d 444 (1978)).

■ The conversations relating to employment constitute commercial speech. All that is required for the constitutionally permissible regulation of commercial speech is "a ' "fit" between the legislature's ends and the means chosen to accomplish those ends'—a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is 'in proportion to the interest served'; that employs not necessarily the least restrictive means but, . . . a means narrowly tailored to achieve the desired objective." *Board of Trustees*, 492 U.S. at ——, 109 S.Ct. at 3035.

In addition, under *O'Brien*, when "nonspeech" elements are combined with "speech" in the same course of conduct, "a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *O'Brien*, 391 U.S. at 377, 88 S.Ct. at 1679. *See also Young v. New York City Transit Auth.*, 903 F.2d 146, 153 & 157 (2d Cir.1990) (upheld regulation prohibiting begging for money on the New York City subway system because "begging is much more 'conduct' than it is 'speech' " and regulation is therefore subject to the "relaxed . . . more lenient level of judicial scrutiny" of *O'Brien*). In *Ward v. Rock Against Racism*, 491 U.S. 781, 109 S.Ct. 2746, 2754, 105 L.Ed.2d 661 (1989), a rock band challenged regulations that limited the volume of the music that disturbed visitors in the Sheep Meadow area of Central Park and residents in the vicinity of

the Acoustic Bandshell in the park. The Court held:

> The principal justification for the sound-amplification guideline is to ... retain the character of the Sheep Meadow and its more sedate activities. ... This justification for the guideline "ha[s] nothing to do with content."

(quoting *Boos v. Barry,* 485 U.S. 312, 320, 108 S.Ct. 1157, 1163, 99 L.Ed.2d 333 (1988)).

■ We find the subject ordinance "is narrowly tailored [since] it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." *Frisby,* 487 U.S. at 485, 108 S.Ct. at 2502.

Similar ordinances prohibiting entrance upon the highway because of interference with the flow of traffic were sustained in *International Society for Krishna Consciousness,* 876 F.2d at 495–500, and *Acorn,* 798 F.2d at 1262–72.

We find that the City of Glen Cove sustained its burden of proof and met the tests outlined in *O'Brien* and *Board of Trustees.* The ordinance does not violate plaintiffs' First Amendment right of free expression.

■ The further challenge to the constitutionality of the ordinance is that it is overbroad. The plaintiffs read the ordinance as prohibiting "a person standing on the sidewalk from speaking about employment to a person sitting in a legally parked car, but does not prohibit those persons from speaking about the time of day, directions, or a political candidate or cause." (Plaintiff's Memorandum pp. 4–5). We interpret the ordinance in light of the expressed legislative purpose which recognized the "safety hazard by causing motorists to *stop* in traffic and by solicitors who *stand in the street on the driver's side of parked cars....*" (preamble to ordinance) (emphasis added). This defines the violation in terms of interfering with the flow of traffic, and does not subject individuals in the situations to which plaintiffs refer. A statute may be invalidated for overbreadth if it can be said realistically and substantially that it goes beyond the evil which it may legitimately remedy and into areas it may not go, and is not susceptible to a construction that would eliminate any constitutional infirmities. *Broadrick v. Oklahoma,* 413 U.S. 601, 615–18, 93 S.Ct. 2908, 2917–19, 37 L.Ed.2d 830 (1973). A statute is not overbroad simply because some applications of the law are conceivably constitutionally impermissible. *New York State Club Ass'n. v. City of New York,* 487 U.S. 1, 13–14, 108 S.Ct. 2225, 2234–35, 101 L.Ed.2d 1 (1988); *Members of City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 800, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772 (1989). *Cf. Bates v. State Bar of Arizona,* 433 U.S. 350, 380, 97 S.Ct. 2691, 2707, 53 L.Ed.2d 810 (1977) ("But the justification for the application of overbreadth analysis applies weakly, if at all, in the ordinary commercial context"). In any event, upon the findings of the court, City of Glen Cove police issued citations for violations of the ordinance where the member of the class or the potential employer was in the moving lane of traffic or interfered or disrupted traffic in the moving lane. The ordinance as applied to members of the class was within constitutional limitations.

## The Fourteenth Amendment Claim

Plaintiffs claim that defendants violated their Fourteenth Amendment right to "the equal protection of laws" in enforcing the ordinance against them because they are Hispanic. The equal protection claim alleges a pattern of harassment of Hispanics predating the enactment of the ordinance on March 13, 1990 and continuing to the institution of this action which resulted in eliminating the site at Carmen's Deli as an opportunity for their employment.

Many of the Hispanics seeking employment during the period from as early as 1985 to the date of the institution of this action were illegal aliens. At times special agents of INS arrested the illegal aliens at Carmen's Deli parking lot while they were assembled with others awaiting the opportunity for employment. We assume for these purposes that the Mayor and Chief of Police of the City of Glen Cove alerted INS agents from time to time of the presence of illegal aliens at Carmen's Deli. Subsequent to March 13, 1990, City of Glen Cove

police officers surveilled the area of Carmen's Deli and took stationary surveillance positions to observe the groups of Hispanics seeking employment opportunities. On a few occasions, INS agents stopped vehicles carrying Hispanic occupants on suspicion that they were illegal aliens.

The fear of arrest of illegal aliens by INS agents substantially reduced the numbers that gathered at Carmen's Deli prior to March 13, 1990.

We find unworthy of belief the testimony offered by Antonio Diaz that in September 1989 a police officer served him with a citation for parking his vehicle in the Carmen's Deli parking lot, that in another incident the Mayor told a group of five Hispanics to disperse from their work on Bridge Street, and that on April 8, 1990, the Mayor told two people seated at a bus station to leave.

■ A claim of a violation of the constitutional right to "the equal protection of laws" based on race must show that "a discriminatory purpose [of the state action] has been a motivating factor in the decision." *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 265–66, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977); *Washington v. Davis*, 426 U.S. 229, 240, 96 S.Ct. 2040, 2048, 48 L.Ed.2d 597 (1976).

The test is not whether state action affects one racial group more adversely than the other. In *Flores v. Pierce*, 617 F.2d 1386, 1389 (9th Cir.) (Kennedy, C.J.), *cert. denied*, 449 U.S. 875, 101 S.Ct. 218, 66 L.Ed.2d 96 (1980), the court held:

> The impact and effect of law or government action may weigh more adversely on one racial group than another without violating the Constitution. The essence of an equal protection violation on racial grounds lies in the intent or motive to discriminate."

■ The police action in enforcing the ordinance and the action of the INS agents in stopping Hispanics suspected of being illegal aliens, and taking some into custody, may have generated fears that resulted in many Hispanics failing to appear at Carmen's Deli seeking employment. That action by law enforcement officers cannot be held to be discriminatory. Plaintiffs have failed to offer any proof that other race or ethnic groups have been treated differently under the same or similar circumstances.

## CONCLUSION AND ORDER

This memorandum of decision contains findings of fact and conclusions of law required under Fed.R.Civ.P. 52(a).

The City of Glen Cove justified the restriction placed on the First Amendment right of free speech. Plaintiffs failed to establish either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation.

Plaintiffs' motion for a preliminary injunction is in all respects denied, and it is

SO ORDERED.

## APPENDIX

AN ORDINANCE OF THE CITY COUNCIL OF THE CITY OF GLEN COVE, AMENDING THE GLEN COVE MUNICIPAL CODE RELATING TO SOLICITATION OF EMPLOYMENT.

THE CITY COUNCIL OF THE CITY OF GLEN COVE DOES HEREBY ORDAIN AS FOLLOWS:

SECTION 1. The City Council of the City of Glen Cove does hereby find and declare as follows:

WHEREAS, persons are gathering daily in various locations in Glen Cove, for the purpose of obtaining employment by approaching potential employers who drive to those sites in motor vehicles; and

WHEREAS, this practice is causing a variety of problems including harassment and intimidation of persons and families, and creating a safety hazard by causing motorists to stop in traffic and by the solicitors who stand in the street on the driver's side of parked cars while accosting or talking with the driver; and

WHEREFORE, the City Council of the City of Glen Cove does hereby amend the

Glen Cove Municipal Code as follows: The Glen Cove Municipal Code is amended to read as follows:

Solicitation from Streets Prohibited.

(a) It shall be unlawful for any person to stand on a street or highway and solicit, or attempt to solicit, employment, business, or contributions from an occupant of any motor vehicle. For purposes of this section, street or highway shall mean all of the area dedicated to public use for public street purposes and shall include, but not limited to, roadways, parkways, medians, alleys, sidewalks, curbs, and public ways.

(b) It shall be unlawful for any person to stop, park or stand a motor vehicle on a street or highway from which any occupant attempts to hire or hires for employment another person or persons.

(c) It shall be unlawful for any person to solicit employment from an occupant of any motor vehicle. When said act causes a safety hazard or a disturbance to the public.

(d) Each violation of this section shall be punishable by a fine up to $250.00 and/or up to 15 days in jail.