United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 30, 2007**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

No. 05-41689

THE HOUSTON CHRONICLE PUBLISHING CO.;
THE GALVESTON COUNTY DAILY NEWS,

Plaintiffs-Appellees - Cross-Appellants,

versus

CITY OF LEAGUE CITY, TEXAS; ET AL,

Defendants,

CITY OF LEAGUE CITY, TEXAS,

Defendant-Appellant - Cross-Appellee.

Appeals from the United States District Court
for the Southern District of Texas
(3:05-CV-448)

Before JONES, Chief Judge, and WIENER and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

The City of League City, Texas, challenges being permanently enjoined from enforcing, as unconstitutional, its Ordinance 2004-45 (the Ordinance), regulating street vendors and door-to-door solicitors. The City contends: the two plaintiff newspapers, The Houston Chronicle and The Galveston County Daily News, lack standing; the injunction should be vacated for mootness because, post-entry of the injunction, the City repealed the constitutionally impermissible provisions; and the *not*-repealed

provision, § 78-39, which regulates only street vendors' conduct at traffic-signal-controlled intersections, is a constitutional restriction. The newspapers respond: they have standing; vacatur due to mootness is improper because such mootness resulted from the City's voluntary actions; § 78-39 is unconstitutional, as held by the district court; and it erred in *not* awarding them attorney's fees.

Both newspapers have standing. Further, the injunction will *not* be vacated. Because the remaining provision, § 78-39, has never been applied to the newspapers, however, and, because its plain language is non-discriminatory and content-neutral, we reverse the district court's holding it unconstitutional, both facially and as applied. Pursuant to the newspapers' cross-appeal, we reverse the district court's refusal to award attorney's fees to them, because they remain prevailing parties on their claim, pursuant to 42 U.S.C. § 1983. **VACATED IN PART; REVERSED IN PART; REMANDED.**

I.

The instant dispute post-dates a related Texas state-court action, in which the Houston Chronicle sued City officials for prosecuting its street vendors for violating Texas Transportation Code § 552.007(a) (prohibiting street solicitations, *except* by charitable organizations). That state-court action ended in March 2004 with a consent judgment permanently enjoining the City from

prosecuting Houston Chronicle vendors under this state law. ***Houston Chronicle Pub. Co. v. Sistrunk***, No. 03-CV-1587 (122nd Judicial District Court, Galveston County, Texas 3 March 2004).

The Ordinance is similar to the above Texas law. (As noted, most of it was voluntarily repealed after entry of the injunction in this action, leaving only § 78-39, quoted below.) The Ordinance required, *inter alia*, any "solicitor, peddler, canvasser, or itinerant vendor", prior to engaging in any "business and related activities", to: register with the City; submit to a criminal background check; pay a $30 fee; and post a $1,000 bond. LEAGUE CITY, TEX., ORDINANCES art. II, §§ 78-32 and 78-33 (2004). The Ordinance exempted "[m]inors conducting fundraising activities who represent a youth organization, including, but not limited to Boy Scouts, Girl Scouts, Little League groups, and school groups". ***Id.*** at § 78-34(c).

In January 2005, approximately nine months after the 2004 state-court consent judgment, the City amended the Ordinance to add § 78-39. That section is primarily at issue in this appeal and states, in part:

> (a) No person who is *within a public roadway* may solicit or sell or distribute any material to the occupant of any motor vehicle stopped on a public roadway in obedience to a *traffic control signal light*. It is specifically provided, however, that a person, other than a person twelve years of age or younger, may solicit or sell or distribute material to the occupant of a motor vehicle on a public roadway *so long as he or she remains on the*

3

> *surrounding sidewalks and unpaved shoulders,*
> *and not in or on the roadway itself, including*
> *the medians and islands.*

*Id.* at § 78-39 (emphasis added).

A year after the 2004 state-court consent judgment, and several months after § 78-39 was added, the City, using a related Ordinance provision (§ 78-38), issued citations to two Houston Chronicle vendors selling newspapers at the intersection of State Highway FM 518 and Interstate 45, for "soliciting without a permit". *Id.* at § 78-38(12) (making it "unlawful for any peddler, solicitor, canvasser or itinerant vendor" to conduct business "on any public roadway, public roadway median, public sidewalk ... or other public property within the city without written authorization from the city"). As a result, the Houston Chronicle and the Daily News filed this action in August 2005, pursuant to 42 U.S.C. § 1983, claiming the Ordinance violated the First and Fourteenth Amendments.

That October, the district court permanently enjoined enforcement of the Ordinance, holding it unconstitutional, both facially and as applied to prohibit newspaper sales on public streets. Regarding the recently enacted and above-quoted § 78-39, the court found: "the City allows charitable organizations [e.g., firefighters] to solicit donations for their causes at the intersection [in issue] while prosecuting the newspapers' vendors for engaging in constitutionally protected activity because the

4

newspapers' activities are commercial, rather than charitable". *Houston Chronicle Pub. Co. v. City of League City, Tex.*, No. G-05-448 (S.D. Tex. 14 Oct. 2005) (mem.) [hereinafter *USDC Opn.*]. The district court did *not* find, however, that the City ever prosecuted, or threatened to prosecute, the newspapers under § 78-39. But implicit in its findings is the suggestion that the City will do so. *Id.* at *7. In any event, the district court held: "Section 78-39 ... cannot be justified as a valid time, place and manner restriction because the City *de facto* discriminates in enforcing it based on the content of the message being conveyed". *Id.* at *3. The City filed its notice of appeal that November. The following January (2006), however, it voluntarily repealed the provisions of the Ordinance pertaining to registration, bond posting, and door-to-door solicitation; it did *not* repeal § 78-39.

II.

First at issue is whether the newspapers have standing. Because they do, next at issue is whether the injunction should be vacated due to mootness. It is *not* vacated because the mootness is due to the City's voluntarily repealing portions of the Ordinance. The remaining issues are whether the district court erred: (1) in holding § 78-39 unconstitutional (due to the City's repealing the other Ordinance provisions, only the constitutionality *vel non* of § 78-39 remains); and (2) in denying attorney's fees to the newspapers.

5

A.

The City maintains both newspapers lack standing to challenge the repealed provisions of the Ordinance, claiming the controversy as to those provisions is moot. (Mootness as it relates to vacatur is addressed in part II.B.) Concerning the remaining provision, § 78-39, the City conceded at oral argument here that the Houston Chronicle has standing to challenge that section. (Of course, we, *not* the parties, determine such jurisdictional questions.) The City continues, however, to contend the Daily News lacks standing to challenge § 78-39 because it failed to present evidence it engages in street-vendor sales prohibited by that provision.

Standing issues are reviewed *de novo*. *E.g.*, **Rivera v. Wyeth-Ayerst Labs.**, 283 F.3d 315, 319 (5th Cir. 2002). No authority need be cited for our clear-error standard of review for findings of fact. The district court held both newspapers have standing because each demonstrated long-established practices of street-vendor sales in the City. **USDC Opn.** at *1.

To establish standing, a plaintiff must show: (1) it has suffered, or imminently will suffer, a concrete and particularized injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable judgment is likely to redress the injury. *E.g.*, **Lujan v. Defenders of Wildlife**, 504 U.S. 555, 560-61 (1992). As the parties agree, both newspapers satisfy the causation and redressability requirements. Therefore, at issue

6

is: whether the newspapers can demonstrate injury for the repealed provisions and for § 78-39.

Toward this end, the newspapers rely on a 28 April 2005 letter from the City's attorney, which indicated the City would prosecute them under § 78-39. The letter acknowledged possible constitutional problems with subjecting the newspapers to the Ordinance's later-repealed permitting requirements, pursuant to, e.g., § 78-38, but stated:

> It is our position that in all other respects the ordinance represents a reasonable exercise of the City's police power .... As the [City's Police] Chief made clear in his comments [at a meeting that April], [Houston Chronicle] salespeople are, in certain instances, setting up shop in the center of a painted, unimproved median on a busy farm-to-market road intersecting Interstate 45 South. Enforcement of the ordinance will minimize the possibility of serious bodily injury or death for these individuals. In the face of these known circumstances, I cannot imagine that either the [*Houston*] *Chronicle* or *Daily News* would wish to be recognized for having advocated a repeal of these safety measures at the risk of their employees' safety and well-being.

1.

Concerning the Houston Chronicle, the City issued two citations to its vendors at the above-referenced intersection, pursuant to the Ordinance's now-repealed permitting requirements in § 78-38 and related sections. Although the above-quoted correspondence intimates the City would *not* further prosecute both newspapers under § 78-38, it clearly indicated it will do so under

7

§ 78-39.  The Houston Chronicle has demonstrated sufficient injury to establish standing for the repealed provisions and, as discussed below, for § 78-39.

2.

Regarding the Daily News, and contrary to the City's contentions, it *has* demonstrated it engages in sales in the City that would subject its vendors to prosecution under the Ordinance in general and § 78-39 in particular.  In addition to the evidence the district court found sufficient (which finding the City does *not* show was clearly erroneous), this court granted the Daily News' 9 February 2006 motion to supplement the record on appeal, adding evidence that, following entry of the injunction, the Daily News began selling newspapers at the above-referenced intersection. (That motion was filed after the City's November 2005 notice of appeal and its January 2006 repeal of most of the Ordinance. Allowing the supplementation was appropriate in the light of this post-notice-of-appeal conduct by the City.  Of course, after the notice was filed, the evidence could *not* be filed in district court without our remanding for that purpose.)

Chilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement.  ***Meese v. Keene***, 481 U.S. 465, 473 (1987) (holding foreign-films exhibitor showed chill sufficient to meet "objective injury" requirement by demonstrating reputational injuries that would result from labeling

8

films "political propaganda" under the Foreign Agents Registration Act); *but see* **Laird v. Tatum**, 408 U.S. 1, 13-14 (1972) (holding unspecified "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm").

Although, unlike the Houston Chronicle, the Daily News has not been issued a citation under the Ordinance, it has shown a chilling of its First Amendment activities under the repealed Ordinance provisions. Both newspapers have shown such effect for § 78-39, and both have shown imminent future prosecution if the City is *not* enjoined. Therefore, each newspaper has demonstrated specific injury beyond mere subjective chill. **Meese,** 481 U.S. at 473; **Lujan**, 504 U.S. at 560. Thus, like the Houston Chronicle, the Daily News has satisfied the injury-in-fact requirement.

This result is consistent with broader Supreme Court and Fifth Circuit precedent. *See, e.g.,* **Steffel v. Thompson**, 415 U.S. 452, 459 (1974) ("it is not necessary that [a party] first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights"); **Int'l Soc'y for Krishna Consciousness of Atlanta v. Eaves**, 601 F.2d 809, 818 (5th Cir. 1979) (a justiciable controversy exists when "the plaintiff is seriously interested in disobeying, and the defendant seriously intent on enforcing, the challenged measure").

9

The City asserts:  its repealing parts of the Ordinance renders the newspapers' earlier challenge to those parts moot; and, as a result, the injunction should be vacated.  The newspapers concede their challenge to the repealed provisions is obviously moot; but, they claim the City should *not* be permitted to evade the injunction by selectively repealing provisions.  We reject the City's vacatur-due-to-mootness contention.

It goes without saying that disputes concerning repealed legislation are generally moot.  *See, e.g.,* **AT&T Commc'ns of the Sw., Inc. v. City of Austin**, 235 F.3d 241, 244 (5th Cir. 2000) (citing **United States v. Munsingwear, Inc.**, 340 U.S. 36, 39 (1950)).  Nevertheless, "[v]acatur of the lower court's judgment is warranted only where mootness has occurred through happenstance, rather than through *voluntary action of the losing party*".  **Murphy v. Fort Worth Indep. Sch. Dist.**, 334 F.3d 470, 471 (5th Cir. 2003) (*per curiam*) (citing **Arizonans for Official English v. Arizona**, 520 U.S. 43, 71 (1997)(emphasis added)); *see also* **Staley v. Harris County, Texas**, No. 04-20667, 2007 WL 1191147, at *4 (5th Cir. 24 April 2007) (*en banc*).  As the Supreme Court held in **U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership**, 513 U.S. 18, 25 (1994): if mootness results from the losing party's voluntary actions, that party has "forfeited his legal remedy by the ordinary process of appeal ..., thereby surrendering his claim to the equitable remedy

of vacatur".  To allow a party "to employ the secondary remedy of vacatur as a refined form of collateral attack on the judgment would – quite apart from any considerations of fairness to the parties – disturb the orderly operation of the federal judicial system".  *Id.* at 27; *see also*, *AT&T Commc'ns of the Sw., Inc.*, 235 F.3d at 244 ("vacatur does not lie ... when the party seeking relief from the district court's judgment ... 'caused the mootness by voluntary action'" (quoting *U.S. Bancorp*, 513 U.S. at 24)); *Sierra Club v. Glickman*, 156 F.3d 606, 620 (5th Cir. 1998) (refusing to vacate where the issue was rendered moot by the losing party's voluntary compliance with the judgment).

In response to this authority, the City points to two cases; each is readily distinguishable.  In *Arizonans for Official English*, the Supreme Court vacated a judgment as moot because the state employee, who was challenging the Arizona constitutional amendment requiring state employees to speak only English, quit her employment while her appeal was pending.  520 U.S. at 74-75. Because the employee was *not* the loser in the appealed-from judgment, the *U.S. Bancorp* rule was *not* involved.

Similarly, in *AT&T Communications of the Southwest, Inc.*, our court vacated a judgment due to mootness when the ordinance at issue was superseded by a Texas state law.  That law was passed while the appeal was pending and prohibited the ordinance.  235 F.3d at 243-44.  Contrary to the City's contentions, this case also

11

does *not* concern the **U.S. Bancorp** rule because, again, the mootness was *not* caused by the losing party's actions; rather, the Texas legislature created it by enacting the new law. **Id.**

Our decision here finds further support in our court's recent *en banc* decision in **Staley**, in which we refused to vacate an injunction against a religious display outside a Texas courthouse after the defendant-county voluntarily removed it. 2007 WL 1191147, at *8. As emphasized in **Staley**, vacatur is an "extraordinary" and equitable remedy, "to be determined on a case-by-case basis, governed by facts and not inflexible rules". **Id.** at *4 (citing **U.S. Bancorp.**, 513 U.S. at 25-26). The burden is on "the party seeking relief from the *status quo*"; that party must demonstrate "equitable entitlement to the extraordinary writ of vacatur". **U.S. Bancorp.**, 513 U.S. at 26.

In holding the defendant-county in **Staley** had *not* made such a showing, our *en banc* court distinguished several cases granting vacatur even though the controversy was mooted by the losing party's voluntary action. *See*, *e.g.*, **Russman v. Bd. of Educ.**, 260 F.3d 114 (2d Cir. 2001) (granting vacatur and differentiating between voluntary conduct purposefully taken to moot a controversy, and voluntary conduct "entirely unrelated to the lawsuit", such as the plaintiff-student graduating from school); **Khodra Envtl., Inc. v. Beckman**, 237 F. 3d 186, 195 (3d Cir. 2001) (granting vacatur when no evidence suggested the mootness-causing legislation

12

responded to the unfavorable judgment); *Nat'l Black Police Ass'n v. Dist. of Columbia*, 108 F.3d 346, 350-52 (D.C. Cir. 1999) (vacating judgment as moot when challenged campaign-contribution limits were removed *before* the district court enjoined them). As noted in *Staley*, equitable factors distinguish these cases from the instant case, including: whether plaintiffs obtained full relief in district court *before* the defendants mooted the case; and the extent to which non-parties to the litigation were impacted by the district court judgment. 2007 WL 1191147, at *6.

Consistent with *Staley*, and unlike *Russman, Khodra Environmental*, and *National Black Police Association*, the equitable factors in the instant case weigh against vacating the district court's injunction. Contrary to *Russman*, the mootness-causing action did not result from typical progression of events, such as a student graduating from school. Distinct from *Khodra Environmental*, the City has not shown its repealing the Ordinance provisions was not in response to the district court judgment. And unlike *National Black Police Association*, the newspapers obtained full relief in district court *before* League City repealed most of the Ordinance. Moreover, the Ordinance has been applied exclusively against the newspapers, rather than non-parties to this litigation. Therefore, we refuse to vacate the injunction.

C.

13

As discussed, § 78-39, the only provision *not* voluntarily repealed, was held unconstitutional by the district court. The City contends § 78-39 is a constitutionally permissible, content-neutral time, place, and manner restriction, narrowly tailored to achieve a compelling governmental interest. *See **Konigsberg v. State Bar of Cal.***, 366 U.S. 36, 50 (1961) (general regulatory ordinances "not intended to control the content of speech but incidentally limiting its unfettered exercise, have not been regarded as the type of law the First or Fourteenth Amendments forbade").

Despite its ultimately holding § 78-39 unconstitutional, the district court found § 78-39 "has no content-based discriminatory intent". ***USDC Opn.*** at *5. Consistent with the above-quoted letter from the City attorney, the City relies on this finding to maintain its content-neutral purpose is one of public safety: to prohibit the dangerous activity of solicitors' entering busy traffic intersections. Toward this end, the City demonstrated at trial that newspaper street-vendors in nearby cities had been seriously injured at intersections similar to FM 518/I-45. According to the City, § 78-39 was deliberately drafted to restrict solicitations only at intersections controlled by traffic-signal lights in order to narrowly tailor the restriction, while leaving open adequate alternative channels for solicitation. *See*, *e.g.*, ***Int'l Soc'y for Krishna Consciousness of New Orleans, Inc. v. City of Baton Rouge***,

14

876 F.2d 494, 495-96 (5th Cir. 1989) (upholding an ordinance stating, "[n]o person shall be upon or go upon any street or roadway ... for the purpose of soliciting employment, business, or charitable contributions of any kind from the occupant of any vehicle").

Despite its above-quoted finding that § 78-39 "has no content-based discriminatory intent", the district court held the section "cannot be justified as a valid time, place and manner restriction because the City *de facto* discriminates in enforcing it based on the content of the message being conveyed". ***USDC Opn.*** at *6. It further held § 78-39 was *not* applied in a content-neutral manner because the City "allows charitable organizations to solicit donations for their causes at the intersection of FM 518 and Interstate 45 while prosecuting the newspapers' vendors for engaging in constitutionally protected activity". ***Id.*** And it held § 78-39 was neither narrowly tailored nor designed to serve a compelling government interest:

> According to [the] City's own witnesses [referring, *inter alia*, to its Police Chief's testimony], [§ 78-39] is not narrowly drawn to promote the City's stated goal of promoting safety, and the City plainly has no compelling interest in *allowing street solicitations for ... charitable organizations while prohibiting newspaper sales*.

***Id.*** at *7 (emphasis added). (Of course, this holding was prior to the voluntary repeal of parts of the Ordinance, including those permitting solicitations for charitable organizations.)

15

Injunctive relief is reviewed for an abuse of discretion. *Peaches Entm't Corp. v. Entm't Repertoire Assocs., Inc.*, 62 F.3d 690, 693 (5th Cir. 1995) (permanent injunction reviewed for abuse of discretion) (citations omitted).  In that regard, a district court abuses its discretion when it:  "(1) relies on clearly erroneous factual findings when deciding to grant or deny the permanent injunction[,] (2) relies on erroneous conclusions of law when deciding to grant or deny the permanent injunction, or (3) misapplies the factual or legal conclusions when fashioning its injunctive relief".  *Id.*

The district court correctly stated the applicable law: streets are traditional public forums, *United States v. Grace*, 461 U.S. 171, 177 (1983); the sale of newspapers is a First-Amendment-protected activity, *see*, *e.g.*, *New York Times Co. v. Sullivan*, 376 U.S. 254, 266 (1964); therefore, in order to prohibit such activity in a quintessential public forum, a content-based regulation must be "necessary to serve a compelling state interest and ... narrowly drawn to achieve that end"; and, when the regulation is content-neutral, it must also be "narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication", *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983).  *USDC Opn.* at *4-5. The district court correctly applied these legal principles to the Ordinance as a

16

whole, as well as to the City's application of it to the newspapers.  *Id.* at *6-7.

With regard to § 78-39, however, the district court's holding it unconstitutional can *not* be upheld, now that the section stands alone, stripped of any discriminatory context provided by the repealed provisions.  For example, repealed § 78-34 exempted from the Ordinance's proscriptions "youth organization[s], including, but not limited to Boy Scouts, Girl Scouts, Little League groups and school groups".  ORDINANCE § 78-34.

Viewed in isolation, § 78-39 is *not* facially unconstitutional. *See **United States v. Salerno***, 481 U.S. 739, 745 (1987) ("[a] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid").  We reject the newspapers' assertions that, by only prohibiting solicitations at intersections controlled by traffic-signal lights, § 78-39 is *underinclusive* – too narrowly tailored – to effectively serve any real public-safety interest. On its face, prohibiting street solicitations *only* at such intersections is a reasonable means to narrowly tailor § 78-39's reach.  Such intersections (those requiring traffic-signal lights) are generally the most heavily trafficked.  *See **USDC Opn.*** at *7 (stating approximately 37,000 vehicles per day cross the I-45/FM-518 intersection).  Therefore, they are the most dangerous.

17

Accordingly, § 78-39's proscription serves a compelling interest at the heart of government's function: public safety. *See **Int'l Soc'y for Krishna Consciousness of New Orleans, Inc.,*** 876 F.2d at 496-97.

Further, the district court erred in concluding that "the City *de facto* discriminates in enforcing [§ 78-39] based on the content of the message being conveyed". ***USDC Opn.*** at *6. As noted, although it has threatened to do so (creating standing for the newspapers, as discussed *supra*), the City has *never applied* § 78-39 to either newspaper. The two citations were pursuant to § 78-38, *not* § 78-39. Neither newspaper contends the City has ever enforced § 78-39 against them, and the district court made no such factual finding. *See **Nat'l Endowment for the Arts v. Finley***, 524 U.S. 569, 586-87 (1998) (refusing to engage in a hypothetical as-applied analysis based on facts *not* before the Court).

Lacking actual application, the newspapers contended at oral argument here that a Texas law, Texas Transportation Code § 552.0071, obligates the City to discriminate against them in applying § 78-39. That law requires local governments to allow municipal employees, such as firefighters, "to stand in a roadway to solicit a charitable contribution", so long as such solicitors comport with other local requirements, such as posting a bond or obtaining a permit. TEX. TRANSP. CODE ANN. § 552.0071 (Vernon 2005). The newspapers argued: this state law imports discrimination into

18

§ 78-39 against non-municipal, non-charitable organizations; because the City would violate § 552.0071 by applying § 78-39 against charitable-municipal-employee street-solicitors, a mandatory exception to § 78-39 is created by operation of law; and this contention is sufficient to uphold the district court's finding § 78-39 "*de facto* discriminatory".

The newspapers, however, did *not* expressly make this imported-into-§-78-39 contention in district court; *nor* did they include it in their submitted "Plaintiffs Findings of Fact and Conclusions of Law", which, except for *not* awarding attorney's fees, the district court adopted nearly verbatim and without altering the title; *nor* did they assert it in their brief to this court. Instead, at oral argument, the newspapers relied on a vague reference in their appellate brief concerning the Police Chief's testimony, in which he stated the City intended to discriminate between charitable and non-charitable solicitations through a combination of § 78-39 and "a state law".

Generally, we do *not* consider issues presented for the first time at oral argument. Even assuming the issue was raised in the newspapers' brief, an unspecified reference to "state law" is insufficient to present it adequately. *See*, *e.g.*, FED. R. APP. P. 28(f) ("If the court's determination of the issues presented requires the study of statutes, rules, regulations, etc., the relevant parts must be set out in the brief or in an addendum at

19

the end"). In any event, the Police Chief's testimony regarding the City's *future* enforcement *intentions* is an inadequate factual basis to support the district court's "*de facto* discrimination" finding or any as-applied analysis. *See **Finley***, 524 U.S. at 586-87.

An as-applied unconstitutionality issue *may* arise in the future, of course, if the City enforces § 78-39 against the newspapers. Based on the record on appeal, however, we can *not* uphold the district court's conclusion that § 78-39 *has been applied* unconstitutionally. *See **id.*** Therefore, we reverse the district court's enjoining § 78-39 as unconstitutional.

D.

The denial of attorney's fees is reviewed for an abuse of discretion. ***Hensley v. Eckerhart***, 461 U.S. 424, 429 (1983) (attorneys' fees reviewed for abuse of discretion, citing 42 U.S.C. § 1988). The newspapers assert: as prevailing parties in a § 1983 action, they are entitled to such fees; and the district court abused its discretion in refusing to award them, especially without explanation. The City counters that the denial was within the court's discretion under 42 U.S.C. § 1988(b); it provides: "In any action or proceeding to enforce a provision of section[] ... 1983 ... the court, *in its discretion*, may allow the prevailing party ... a reasonable attorney's fee". (Emphasis added.)

20

The Supreme Court has interpreted § 1988(b) to mean "a prevailing plaintiff should *ordinarily* recover an attorney's fee unless *special circumstances* would render such an award unjust". **Hensley**, 461 U.S. at 429 (internal quotations and citations omitted) (emphasis added). Our court has further held: "Because Congress believed that the incentive of attorney's fees was critical to the enforcement of the civil rights laws, section 1988 requires *an extremely strong showing of special circumstances* to justify a denial of fees". **Kirchberg v. Feenstra**, 708 F.2d 991, 998 (5th Cir. 1983) (internal citation omitted) (emphasis added).

In refusing to award fees, the district court did *not* provide *any* explanation, or reference any "special circumstances", justifying its denial, even though the newspapers prevailed on *all* of their claims. *See, e.g.*, **Hensley**, 461 U.S. at 433 ("plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit" (internal quotations omitted)).

Although we reverse the district court's holding § 78-39 unconstitutional, the newspapers remain "prevailing parties", and, therefore, are entitled to attorney's fees. As recently discussed in **Staley**: "[A] determination of mootness neither precludes nor is precluded by an award of attorneys' fees. The attorneys'fees question turns instead on a wholly independent consideration:

whether plaintiff is a 'prevailing party'". 2007 WL 1191147, at *8 (quoting *Doe v. Marshall*, 622 F.2d 118, 120 (5th Cir. 1980)). "To qualify as a prevailing party '[a]ll that is required is that the plaintiff obtain the primary relief sought.'" *Id.* (quoting *Marshall*, 622 F.2d at 120).

Among other equitable factors, because the newspapers obtained the primary relief they sought in district court, they remain prevailing parties and are entitled to attorney's fees. Accordingly, we reverse the denial of attorney's fees and remand this action to district court for their imposition.

## III.

For the foregoing reasons, the newspapers prevail except as to § 78-39. Accordingly, the injunction against § 78-39 is **VACATED**; the denial of attorney's fees is **REVERSED**; and this action is **REMANDED** to the district court for imposition of those fees.

*VACATED IN PART; REVERSED IN PART; REMANDED*