Dear Sidney A. Katz
On behalf of the Gaithersburg City Council and yourself, you requested our opinion as to the constitutionality of § 15-9 of the Gaithersburg City Code, which was enacted last year to forbid solicitation for certain purposes in and near roadways. You indicated that the State's Attorney's Office has questioned whether the ordinance, which is generally referred to as the "anti-solicitation ordinance," is constitutional.
In compliance with our policies concerning opinion requests from local governments, you provided us with a thorough opinion by the City Attorney. In that opinion, the City Attorney canvassed the relevant legal authorities and concluded that the ordinance does not violate the guarantee of free speech in the First Amendment of the United States Constitution — the basis on which some other municipal anti-solicitation ordinances have been found to be unconstitutional. She stated that the ordinance "is a content neutral restriction, narrowly tailored to serve the substantial government interests of vehicle and pedestrian safety."
We respectfully disagree with the City Attorney's resolution of this difficult legal question for two reasons. First, in our view, the provisions of the ordinance most closely related to public safety — which concern conduct in the roadway — are preempted by the Maryland Vehicle Law. Second, the provisions that are not preempted — which address conduct in vehicles, on the sidewalk, or in parking areas — are not narrowly tailored so as to survive First Amendment scrutiny. *Page 32 
 I Anti-Solicitation Ordinance
Section 15-9 of the Gaithersburg City Code ("Gaithersburg ordinance" or "anti-solicitation ordinance"), entitled "Solicitation in Roadways," was enacted on February 20, 2007, as part of City Ordinance 0-4-07. It contains two key prohibitions. The first is addressed to certain types of solicitations by pedestrians:
 It shall be unlawful for any person, while occupying as a pedestrian any portion of a public or private roadway, sidewalk, driveway, parking area, or alley, including drive lanes, medians and curbs, to solicit or attempt to solicit employment, donations, alms or subscriptions, from any pedestrian who temporarily exits a vehicle, or from any person occupying or traveling in a vehicle, on a roadway, sidewalk, driveway, parking area, or alley.
§ 15-9(d)1. The second is addressed to solicitations by individuals in vehicles:
 It shall be unlawful for any person occupying or traveling in a vehicle, or who temporarily exits a vehicle, to solicit or attempt to solicit employment, donations, alms or subscriptions, from a person who is a pedestrian on a public or private roadway, sidewalk, driveway, parking area, or alley, including drive lanes, medians and curbs.
§ 15-9(d)2.
The phrase "solicit or attempt to solicit" is defined "as and/or includ[ing] the act of requesting, announcing, or offering, by any means, the availability for or the availability of employment; any action which seeks to offer, contract for, purchase, sell, or procure employment; any request for money or other property; any attempt to contribute money or other property." § 15-9(c)1. The definition identifies the following acts which may indicate a solicitation: "approach between or among individuals; participation in discussions undertaken in response to the solicitation by another *Page 33 
person; departing the place of approach together; utilization of a vehicle in the approach or departure." Under the definition, the described conduct "may be deemed a solicitation, whether or not an actual employment relationship is created, or money or other property is actually contributed." However, excluded from the definition is "any activity conducted within or in accordance with the procedures of a lawfully approved formal assembly site for day workers, or other lawfully approved employment center use, issued a use and occupancy permit." § 15-9(c)1.[1]
Legislative findings enacted as part of the ordinance indicate that the City Council has determined that there has been increased solicitation, resulting in a "significant attendant increase in safety hazards within the City," and that solicitation results in the distraction of drivers, the congestion of streets, parking areas, driveways, and sidewalks, and the creation of hazards when pedestrians enter travel lanes. § 15-9(a). The ordinance indicates that its purpose is "to provide a mechanism to ensure the safety and well being of pedestrians, vehicle drivers and solicitors while occupying roadways, sidewalks, driveways, parking areas or alleys within the City by prohibiting the conduct which creates significant traffic and pedestrian safety hazards." § 15-9(b).[2]
The ordinance includes a severability provision, indicating that if any portion of the ordinance is held invalid by a court, the City Council intends that the remainder of the ordinance shall remain in effect as if it did not contain the invalid provision. § 15-9(e).
The effectiveness of the ordinance was made contingent on the opening of an employment center, either within the City or within Montgomery County "proximate to the City's corporate boundaries." *Page 34 
§ 15-9(f). We understand that the City subsequently delayed the effective date, pending further legal review.[3]
 II State Preemption
Your request concerned the constitutionality of the anti-solicitation ordinance. However, a preliminary question is the City's authority to regulate in this area. As a municipal corporation, Gaithersburg has broad home rule authority under Article XI-E of the Maryland Constitution and Article 23A of the Annotated Code of Maryland.Southland Corp. 7-Eleven Stores v. Mayor and City Council ofLaurel, 75 Md. App. 375, 379, 541 A.2d 653 (1988). In particular, pursuant to Article 23A, § 2(a), a municipality may exercise its police power. However, the powers of a municipal corporation, including its police power, may be constrained, or preempted, by State law. Maryland Constitution, Article XI-E, § 6; Annotated Code of Maryland, Article 23A, § 2(a); see also Allied Vending, Inc. v. City of Bowie,332 Md. 279, 297, 631 A.2d 77 (1993); 62 Opinions of the Attorney General 523 (1977).
The Maryland Vehicle Law, codified in Annotated Code of Maryland, Transportation Article ("TR"), §§ 11-101 et seq., applies generally throughout the State. Subject to limited exceptions, it explicitly preempts inconsistent local regulations. It provides, in relevant part:
 (a) Except as otherwise expressly provided, the provisions of the Maryland Vehicle Law are statewide in their effect.
 (b) Except as otherwise expressly authorized in this subsection . . . or by any *Page 35 
public general law, no local authority or political subdivision of this State may:
 . . .
 (3) Otherwise make or enforce any local law, ordinance, or regulation on any subject covered by the Maryland Vehicle Law.
 (c) Except as otherwise provided in the Maryland Vehicle Law:
 (1) The provisions of the Maryland Vehicle Law prevail over all local legislation and regulation on any subject with which the Maryland Vehicle Law deals;
 (2) All public local laws, ordinances, and regulations that are inconsistent or identical with or equivalent to any provision in the Maryland Vehicle Law are repealed; and
 (3) The charters of all political subdivisions of this State are modified to prohibit the political subdivision from making or enforcing any ordinance or regulation in violation of the Maryland Vehicle Law.
TR § 25-101.1. The Maryland Vehicle Law explicitly preserves the authority of a local government "in the reasonable exercise of its police power" to regulate certain matters involving highways. In particular, the law recognizes that a local government may regulate or prohibit the parking, standing, and stopping of vehicles on highways under its jurisdiction. TR § 25-102(a)(1).
Two provisions of the Maryland Vehicle Law that govern the conduct of pedestrians in roadways are pertinent here. First, there is a state-wide prohibition on standing in a roadway to engage in certain activities: "Except for the occupant of a disabled vehicle who seeks the aid of another vehicle, a person may not stand in a roadway to solicit a ride, employment, or business from the occupant of any vehicle." TR § 21-507(a). This Office has taken the position that the ban on business solicitation in this statute should be interpreted broadly to encompass the solicitation of donations, given *Page 36 
that its purpose is to promote public safety. Letter from Kathryn M. Rowe, Assistant Attorney General, to the Honorable David D. Rudolph (June 28, 2004).
Second, specific to Montgomery County, the Maryland Vehicle Law prohibits a minor from standing in a roadway, median divider, or intersection to solicit money or donations from an occupant of a vehicle. TR § 21-507(g). For purposes of these provisions, a roadway encompasses the improved portion of a highway used for vehicular travel; it does not include the shoulder. TR § 11-151.[4]
The State statute thus explicitly regulates solicitations by pedestrians standing in a roadway and, in Montgomery County, solicitations by minors standing in the roadway, intersection, or median divider. In our view, the portion of the City anti-solicitation ordinance that duplicates these restrictions is preempted by the State statute and cannot be given effect independent of the State law.See TR § 25-101.1(c)(2) ("all . . . ordinances . . . identical with any provision in the Maryland Vehicle Law are repealed"). Thus, State law preempts the Gaithersburg ordinance to the extent the ordinance prohibits a person from making solicitations while standing in the actual roadway. Similarly, the City ordinance could not be applied to regulate minors standing either in the roadway or on a median divider to solicit money or donations from vehicle occupants. Rather, those activities would be subject to the similar prohibition in the Maryland Vehicle Law.[5] *Page 37 
However, the Gaithersburg ordinance is not limited to roadway solicitations. It also prohibits solicitation from vehicles, solicitation from the sidewalk, and solicitation in public and private parking areas, none of which are addressed by the Maryland Vehicle Law. In our view, there is no preemption as to those parts of the ordinance.[6] Cf. 73 Opinions of the Attorney General 252 (1988) (Maryland Vehicle Law does not preempt City of Rockville from regulating the parking of trucks on private property).
 III Freedom of Speech
A. First Amendment
The First Amendment states that "Congress shall make no law . . . abridging the freedom of speech." This limitation also applies to the states; thus, municipal ordinances are within the scope of this limitation on governmental authority. Members of the City Council of theCity of Los Angeles v. Taxpayers of Vincent, 466 U.S. 789, 792 n. 2 (1984). A law that restricts various types of solicitation, like the Gaithersburg ordinance, implicates the right of free speech protected by the First Amendment. See, e.g., Village of Schaumburg *Page 38 v. Citizens for a Better Env't, 444 U.S. 620 (1980) (charitable solicitations within protection of First Amendment).[7]
Because the City has not enforced the ordinance to date, no issues have arisen as to how the ordinance is implemented or applied. Thus, our focus is on the language of the ordinance itself.
B. Public Forum
The application of the First Amendment depends in part on whether the speech in question occurs in a "public forum." A traditional public forum is a place which "by long tradition or by government fiat ha[s] been devoted to assembly and debate. . . ." Perry Educ. Ass'n v. PerryLocal Educators' Ass'n, 460 U.S. 37, 45-46 (1983). There is no question that the areas in which the Gaithersburg ordinance primarily applies,i.e., public streets and sidewalks, are a traditional public forum.Id. In a traditional public forum, government regulation of expressive activity is "sharply circumscribed," id., and subject to "the highest scrutiny," Int'l Soc'y for Krishna Consciousness, Inc. v. Lee,505 U.S. 672, 678 (1992). However, "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." Heffron v. Int'l Soc. for KrishnaConscious, Inc., 452 U.S. 640, 647 (1981).
Even in a public forum, the government may regulate, in a reasonable manner, the time, place, and manner of speech, without reference to the content of the speech, so long as that regulation is narrowly tailored to serve a significant government interest and leaves open alternative channels of communication.[8] Perry *Page 39 Education Ass'n, supra, 460 U.S. at 45; Ward v. Rock AgainstRacism, 491 U.S. 781, 791 (1989). Thus, the answer to your inquiry turns on whether the ordinance is content neutral, is narrowly tailored to achieve a significant government purpose, and allows alternative channels of communication.[9] *Page 40 
 C. Criteria for Time, Place, and Manner Regulation in a PublicForum
 1. Whether the Ordinance is Content Neutral
The principal question in determining whether a regulation of speech is content neutral is whether or not the government has adopted the regulation because of its disagreement with the message conveyed.Ward, 491 U.S. at 791. As the Supreme Court has stated:
 The government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others. Government regulation of expressive activity is content neutral so long as it is justified without reference to the content of the regulated speech.
Id.
In the legislative findings that it adopted when it enacted the Gaithersburg ordinance, the City Council identified traffic control and public safety as the underlying purposes of the ordinance — a justification that is content neutral.[10] However, the assertion of a content-neutral purpose will not necessarily save a regulation which, on its face, discriminates based on content. Turner Broadcasting System v.FCC, 512 U.S. 622, 642-43 (1994); see also Am. Civil Liberties Union ofNevada v. City of Las Vegas, 466 F.3d 784, 793 (9th Cir. 2006).
It might be argued that the anti-solicitation ordinance discriminates based on the content of speech because it addresses only solicitations, while leaving unregulated other types of speech near highways. For example, the ordinance would not appear to extend to a candidate standing on the shoulder of a roadway waiving a sign in the hope of gaining votes.
On the other hand, the act of solicitation itself — regardless of the content of the solicitation — often requires a response from the *Page 41 
person solicited and thus may be more distracting than informational advertising. Ordinances focused on the act of solicitation have generally been upheld as content neutral. For example, in Comite deJornaleros de Redondo Beach v. City of Redondo Beach,475 F. Supp. 2d 952 (C.D. Cal. 2006), an ordinance prohibited a person from standing on a street to solicit employment, business, or contributions from occupants of motor vehicles and prohibited a person from stopping a vehicle on a street so an occupant of the vehicle might attempt to hire another person. The court concluded that the ordinance was content neutral, noting that the act of solicitation could be more disruptive of traffic and crowd flow than mere oral advocacy. 475 F. Supp. 2d at 961. Courts have reached similar conclusions about anti-solicitation ordinances in other cases. See ACORN v. City of Phoenix, 798 F.2d 1260,1267 (9th Cir. 1986) (ordinance prohibiting a person from standing on a street to solicit employment, business, or contributions from occupants of motor vehicles was content neutral); Houston Chronicle Publ'ng Co. v.City of League City, Texas, 488 F.3d 613, 621-22 (5th
Cir. 2007) (ordinance prohibiting a person standing in a roadway from soliciting or distributing any material to a vehicle occupant stopped at a traffic light had no content-based discriminatory intent, but was intended to promote public safety); Gresham v. Peterson, 225 F.3d 899
(7th Cir. 2000) (court cited parties' stipulation that ordinance restricting "aggressive panhandling" in certain public places was content neutral); but cf. Am. Civil Liberties Union of Nevada v.City of Las Vegas, 466 F.3d at 794-96 (ordinance prohibiting solicitation, either orally or through written materials, was a content-based regulation in that it permitted distribution of certain handbills but prohibited others, based on the message that the handbill conveyed).
In our view, the Gaithersburg ordinance is content neutral. On its face, the ordinance is focused not so much on the content of the solicitation but on the conduct of solicitation in particular venues and the ramifications of such conduct for public safety and traffic flow. It is true that enforcement of the ordinance requires an evaluation of the content of a roadside solicitation — i.e., is it among the types of solicitation listed in the ordinance? However, it is not improper to look at the general content of a oral or written communication to determine whether a law applies. Hill v. Colorado, 530 U.S. 703, 721
(2000) (statute that restricted individuals from engaging in "oral protest, education, or counseling" within specified distance of health care facility was "content neutral" even though it was necessary to look to the content of the speech to determine whether the statute applied). While the Gaithersburg ordinance covers broad categories of solicitation — for *Page 42 
employment, donations, alms, or subscriptions — it makes no distinction based on the specific content of the solicitation or its beneficiary.
Thus, we proceed to the second step in the analysis: whether the ordinance is narrowly tailored to achieve its stated purpose.
2. Whether the Ordinance is Narrowly Tailored
An ordinance that restricts speech in a public forum must also be narrowly tailored to serve a significant governmental interest. First, we must identify that interest. The Gaithersburg ordinance itself describes its purposes. The "findings" of the City Council in the ordinance state that solicitation in and near roadways creates traffic congestion and poses a safety hazard by distracting drivers and by causing pedestrians to enter the roadway.
There is no doubt that traffic control and safety is a significant government interest. Metromedia, Inc. v. City of San Diego,453 U.S. 490, 507-508, 528 (1981); see also ACORN v. City of Phoenix, 798 F.2d 1260,1268 (9th Cir. 1986) (orderly traffic flow in congested urban areas is a major concern, particularly because obstruction or delay at one point along traffic artery results in backups down the roadway); Houston Chronicle Publ'g Co., 488 F.3d at 622
(restricting solicitations at signal-controlled intersections serves "compelling interest at the heart of government's function: public safety"). The prohibitions in the Gaithersburg ordinance address, among other things, actions of vehicle occupants and solicitation efforts on median strips and shoulders of roadways in the City — activities clearly relating to public safety and traffic control.[11]
The next question is whether the prohibitions in the ordinance are narrowly tailored to serve the interest of enhancing public safety and reducing traffic congestion. The Supreme Court has described this requirement as follows:
 [The ordinance] need not be the least restrictive or least intrusive means of doing so. Rather, the requirement of narrow tailoring is *Page 43 
satisfied so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation. To be sure, this standard does not mean that a time, place, or manner regulation may burden substantially more speech than is necessary to further the government's legitimate interests. Government may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals. So long as the means chosen are not substantially broader than necessary to achieve the government's interest, however, the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative.
Ward, 491 U.S. at 798-800 (internal citations and quotes omitted). In sum, this test turns on the degree to which ordinance casts too broad a shadow, restricting speech unrelated to the stated purpose of the ordinance.
In our view, the Gaithersburg ordinance fails this test. First, the ordinance extends to individuals standing on a sidewalk. In Comite deJornaleros de Redondo Beach, the court held that a similar municipal ordinance that effectively banned solicitation by a pedestrian on a sidewalk was not narrowly tailored to serve the city's asserted interest in traffic and pedestrian safety. 475 F. Supp. 2d at 964-65. The court pointed out that the ordinance would ban solicitation for employment in a number of circumstances where traffic would not be impeded. For example, it would reach a day laborer standing on a public sidewalk, who signaled a driver to pull into an adjacent parking lot so that the parties could confer about possible employment, or one who held up a sign inviting drivers to a private location to discuss employment.Id. at 965. See also CHIRLA v. Burke, 2000 WL 1481467 (C.D.Cal. 2000) at *6-9 (anti-solicitation ordinance that reached unobtrusive sidewalk conduct burdened a "substantial amount of speech that has not been shown to cause the feared harms to traffic flow and safety" and therefore was not narrowly tailored). Similarly, under the Gaithersburg ordinance, a high school student would be prohibited from holding a sign on a public sidewalk to encourage drivers to pull into an adjacent parking lot for a carwash as part of a school fund raiser. *Page 44 
Second, with respect to solicitation by occupants of vehicles, the Gaithersburg ordinance would extend even to an occupant of a vehicle that is legally parked, or stopped on a street with little traffic. For example, a driver of a vehicle who stopped on a residential street to ask a neighbor in a driveway about his or her willingness to babysit, would be in violation of the ordinance. The court in Comite deJornaleros cited similar potential applications of the Redondo Beach anti-solicitation ordinance and held that the ordinance was not narrowly tailored. Id.[12]
Finally, the Gaithersburg ordinance also extends to solicitation in parking areas. To be sure, any interaction between motor vehicles and pedestrians can involve safety concerns. However, it is in the nature of parking lots that pedestrians and automobiles are in close proximity and that solicitation of motorists in such an area might be a safer option than elsewhere. Thus, a blanket prohibition on solicitation by pedestrians and occupants of motor vehicles in every public parking area would not be narrowly tailored.[13]
By contrast, courts have found anti-solicitation ordinances that focus on conduct in the roadway are narrowly tailored. For example, inACORN v. St. Louis County, 930 F.2d 591 (8th Cir. 1991), a county ordinance provided simply that "[n]o person shall stand in a roadway for the purpose of [solicitation]." The parties stipulated that the ordinance did not forbid soliciting drivers from areas off the roadway. 930 F.2d at 594. The court cited evidence introduced by both parties that soliciting in a roadway is dangerous and slows traffic. Even though the plaintiff's solicitors were specially trained for roadway solicitation to minimize those concerns, the court found *Page 45 
that the prohibition against solicitation in the roadway did not burden speech more than necessary to further the government's interest in traffic safety and was therefore narrowly tailored. Id. at 596-97. Similarly, in A C O R N v. City of Phoenix, 798 F.2d 1260, 1270-71
(9th Cir. 1986), the court held that a state statute that prohibited pedestrians from walking "along and upon" a roadway adjacent to the sidewalk or standing in the roadway to solicit drivers was narrowly tailored, given its finding that presence of the plaintiff organization's solicitors on a roadway or intersection was a safety hazard. See also ISKCON v. City of Baton Rouge, 876 F.2d 494
(5th Cir. 1989) (ordinance that prohibited solicitation of vehicle occupants from the roadway or roadway shoulder was narrowly tailored); Houston Chronicle Publ'g Co., 488 F.3d at 622 (ordinance that regulated street vendors for purpose of public safety was narrowly tailored in that restrictions were limited to intersections controlled by traffic signal, which were likely to be the most heavily trafficked);but see ACORN v. City of New Orleans, 606 F.Supp. 16 (E.D.La. 1984) (ordinance that forbade standing in roadway to solicit a ride or on median area to sell items or solicit funds was not narrowly drawn and therefore unconstitutional under the First Amendment).
3. Summary
The portions of the Gaithersburg ordinance that are not preempted by State law regulate speech in a traditional public forum. While those provisions are content neutral, they are not narrowly tailored to serve the designated purposes of public safety and traffic flow. Accordingly, in our view, the ordinance would not survive a constitutional challenge.[14]
 IV Conclusion
In our opinion, the Gaithersburg ordinance is preempted in part by the Maryland Vehicle Law. The surviving provisions of the ordinance concern speech in a traditional public forum, where the *Page 46 
government may enforce time, place, and manner regulation. While the ordinance is content neutral and is addressed to the substantial governmental interest in public safety and traffic flow, it is not narrowly tailored to serve that purpose. Accordingly, it would not survive scrutiny under First Amendment jurisprudence.
 Douglas F. Gansler Attorney General
 William R. Varga Assistant Attorney General
 Robert N. McDonald Chief Counsel Opinions and Advice
[1] The ordinance also defines the terms "employment center," "employment," "donation," "alms," and "subscriptions." § 15-9(c)(2) — (6).
[2] Some contend that, despite its broad language, the Gaithersburg ordinance was specifically targeted at day laborers seeking employment within the City. Letter of David Rocah, Staff Attorney, American Civil Liberties Union, to Assistant Attorney General Robert N. McDonald (July 9, 2007) at 1, 9. The City disputes that contention. See Letter of City Attorney Cathy G. Borten to Assistant Attorney General Willam R. Varga (July 16, 2007). In any event, an Attorney General opinion is not a vehicle for resolving disputed factual issues. We therefore address the constitutionality of the ordinance based on its stated purposes.
[3] The City Attorney's opinion stated that the ordinance was modeled in large part on a similar ordinance adopted by the Town of Herndon, Virginia, which, as of the date of that opinion, had been upheld by the General District Court of Fairfax County against a constitutional challenge. However, in a subsequent appeal, the Circuit Court for Fairfax County held that the Herndon ordinance violated theFirst Amendment. See Town of Herndon v. Stephen Andrews Thomas, MI-2007-644 (Va.Cir.Ct. August 29, 2007) (letter opinion).
[4] The statute reads:
 (a) "Roadway" means that part of a highway that is improved, designed, or ordinarily used for vehicular travel, other than a shoulder.
 (b) If a highway includes two or more separate roadways, the term "roadway" as used in the Maryland Vehicle Law refers to any one roadway separately, and not to all of the roadways collectively.
As to the definition of "highway," see TR § 11-127.
[5] In a practical sense, the consequence of preemption for a violator is the elimination of the possibility of a jail sentence. Under the Gaithersburg ordinance, a violation is punishable by a maximum penalty of up to 90 days imprisonment and a $ 500 fine. Gaithersburg City Code, §§ 1-7, 15-19. By contrast, under the Maryland Vehicle Law, a violation of TR § 21-507(a) is punishable by a maximum penalty of $ 500 fine. TR § 27-101(b).
[6] The ordinance includes a severability clause, indicating that the City Council intended that, even if portions of the ordinance were invalid, the surviving portions should remain effective. The severability clause is not dispositive on that question, but merely an aid to determining legislative intent. See Dorchy v. State ofKansas, 264 U.S. 286, 290 (1924). In this case, it appears to be a fair inference that the legislative body that enacted the ordinance — the Gaithersburg City Council-intended that the provisions that are not preempted should survive. That, of course, is a separate question from the constitutionality of those provisions.
[7] Freedom of speech is also protected under Article 40 of the Maryland Declaration of Rights. The Court of Appeals has interpreted this provision in pari materia with the First Amendment; thus, the analysis would be the same. See, e.g., State v. Brookins, 380 Md. 345,350 n. 2, 844 A.2d 1162 (2004); see also 104 West Washington St. II Corp.v. City of Hagerstown, 173 Md. App. 553, 567, 920 A.2d 482, cert.denied, 400 Md. 647 (2007) (First Amendment and Article 40 arguments considered as single claim).
[8] At least one court has referred solicitation of employment in a public forum as a form of "commercial speech." Central American RefugeeCenter — Carecen v. City of Glen Cove, 753 F.Supp. 437 (1990). Under the four-part analysis that the Supreme Court has applied in assessing the regulation of "commercial speech" under the First Amendment, the Court looks to (1) whether the speech concerns lawful activity and is not misleading; (2) whether the asserted governmental interest is substantial; (3) whether the regulation advances the asserted governmental interest; and (4) whether the regulation is not more extensive than necessary to serve that interest. Central Hudson Gas Electric Corp. v. Public Service Commission, 447 U.S. 557 (1980). The elements of this analysis bear some similarity to the factors considered in assessing time, place, and manner regulation of speech in public forums. For example, the Court has characterized the last criterion of the Central Hudson test as whether the regulation is "narrowly tailored" to achieve the desired objective. Board of Trustees of the StateUniversity of New York v. Fox, 492 U.S. 469, 477-81 (1989). As set out in the text at Part III.C.2 of this opinion, we conclude that the Gaithersburg ordinance is not narrowly tailored to achieve its stated purpose. Thus, it would not pass muster under the First Amendment even if assessed as a regulation of commercial speech.
[9] In her opinion, the City Attorney addressed all of these criteria. She concluded that the ordinance is content neutral in that it aims at solicitation for a variety of purposes, each conveying a different message, rather than focusing on any "single form of expression." Pointing to the City Council's legislative findings and statement of purpose, the City Attorney noted that the City's interests in the protection of pedestrians and motorists, keeping public places safe, and assuring a free flow of pedestrian and vehicle traffic "are significant — indeed substantial — under the law." Because the ordinance does not restrict solicitation activities in other areas of the City, she concluded that it was narrowly tailored and left open alternative channels of communication. She also noted that an employment center that had been opened outside the City limits was accessible by shuttle bus for individuals who had traditionally sought employment in the areas restricted by the ordinance.
[10] There apparently is some dispute about the significance of the circumstances under which the ordinance was enacted. See footnote 2 above.
[11] An ordinance that regulates conduct on sidewalks as opposed to roadways may not serve as compelling a government interest as an ordinance directed to roadway. See, e.g., ACORN v. City of Phoenix, 798 F.2d at1267.
[12] In that case, the city asserted that it had not, and would not, enforce the ordinance in those scenarios. 475 F. Supp.2d at 965. However, the court concluded that enforcement of the ordinance only when traffic safety was implicated or day laborers were involved confirmed that the ordinance was overbroad and raised equal protection concerns.Id.
[13] On its face, the ordinance also appears to encompass a private parking area, which would likely not be considered a public forum.See, e.g., Comite de Jornaleros de Redondo Beach v. City of RedondoBeach, 475 F. Supp. 2d at 967. Thus, the analysis outlined in the text would not apply to that application of the ordinance. However, to the extent a private property owner agreed to allow solicitation, the City's ordinance may raise other constitutional concerns.
[14] Because we believe that the anti-solicitation ordinance is not narrowly tailored, we need not discuss the third criterion for time place and manner regulation — the availability of alternative channels of communication. *Page 47